```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                     THOMASVILLE DIVISION
```

| | |
|---|---|
| THE THOMAS COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SHERNIKA HOLTON, GLADYS SHOTWELL, SPENCER WILSON, SANDRA McINTYRE, MARY HILL, WILLIE MAE LEWIS, JENNIFER HIGHTOWER, EVELYN WILKERSON, SHARON BOSTICK, AUDREY LINDER, and LISA WEBB,<br><br>    Plaintiffs<br><br>v.<br><br>CITY OF THOMASVILLE SCHOOL DISTRICT,<br><br>    Defendant | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br><br>CASE NO. 6:98-CV-63 (CDL) |

O R D E R

The Court of Appeals for the Eleventh Circuit reversed this Court's previous judgment in this school desegregation case on two grounds. First, the Court of Appeals held that this Court failed to apply the legal standard long accepted in this Circuit when this Court found that the City of Thomasville School District's ("District") use of "ability grouping" to determine classroom assignments did not discriminate on the basis of race. The Court of Appeals concluded that this legal error tainted this Court's findings of fact and accordingly remanded with instructions that this Court reconsider the ability grouping issue in light of the correct legal standard. *Holton v. City of Thomasville Sch. Dist.,* 425 F.3d 1325, 1328 (11th Cir. 2005). Second, the Court of Appeals held that this Court erred by failing to expressly state a reason for not awarding costs to the District as the prevailing party and remanded with

instructions that the Court either award costs to the District if it prevailed after the Court's reconsideration of the ability grouping issue or that it explain the reasons for denying costs to the prevailing party.  *Id.* at 1356.  The Court has reviewed the record, received remand briefs from the parties, held a post-remand hearing, studied the decision of the Court of Appeals, and reconsidered its previous Order in light of that decision.  Based upon that reconsideration, the Court issues this Order with the following findings of fact and conclusions of law.

### The Proper Legal Standard

As the Court of Appeals held in its Opinion, this Court did not use the precise legal standard enunciated in *Georgia State Conference of Branches of NAACP v. Georgia,* 775 F.2d 1403 (11th Cir. 1985) ("*Georgia NAACP*").  That standard provides that "ability grouping" is permitted only when it "is not based on the present results of past segregation or will remedy such results through better educational opportunities."  *Holton,* 425 F.2d at 1346 (quoting *Georgia NAACP*, 775 F.2d at 1414 (quoting *McNeal v. Tate County Sch. Dist.,* 508 F.2d 1017, 1020 (5th Cir. 1975))).  Although the Court acknowledges that it did not apply this precise standard, it appears that the Court of Appeals had a misunderstanding of the standard that the Court did use, perhaps because the Court did not clearly articulate it.  It appears from the Opinion of the Court of Appeals that the Court of Appeals thought that this Court's only inquiry regarding ability grouping was focused upon the question of whether the ability grouping was "intentionally discriminatory."  *See Holton* at 1347 ("[T]he district court focused on whether the tracking practice was

2

intentionally discriminatory."). Instead, the Court was required to determine whether the ability grouping was based on present results of past segregation. Admittedly, this Court did not use the magic words "present results of past segregation" and did not include a citation to *Georgia NAACP* or *McNeal*. However, the Court did more than focus on intentional discrimination.

Once this Court found a racial imbalance to exist, it concluded that a presumption existed that the racial imbalance was attributable to the District's previous *de jure* segregated system. It then shifted the burden to the District to rebut the presumption. The Court then found, based upon the evidence at trial, that this presumption had been rebutted by the District. The Court specifically found that the racial imbalances were not traceable in a proximate way to the *de jure* segregated system and that they were not vestiges of that system:

> The Court finds that Plaintiffs presented sufficient evidence of racial imbalances in certain classes to require the District to rebut the presumption that those imbalances are traceable to the District's previous *de jure* segregated system. The Court finds that the District has carried its burden.

*Thomas County Branch of NAACP* v. *City of Thomasville,* 299 F. Supp. 2d 1340, 1358 (M.D. Ga. 2004) ("*Thomas County NAACP*").

> The Court previously found that racial imbalances arguably exist at present as to . . . the racial composition of some individual classes . . . . However, the Court also found that the District carried its burden of proving that the racial imbalances in these areas were not traceable in a proximate way to its previous *de jure* segregated system. The Court also found that current purposeful discrimination did not proximately cause these imbalances. Therefore, since these imbalances are not vestiges of the previous *de jure* segregated system and are not the proximate result of presently practiced racial discrimination, they do not

3

>   support a claim under either the Fourteenth Amendment or Title VI.

*Id.* at 1366-67.

At the risk of redundancy, the Court summarized its findings and conclusions as follows:

>   Any racial imbalances that presently exist in the District [which would include those attributable to ability grouping] are not traceable in a proximate way to the District's previous *de jure* racially segregated system. Moreover, based upon the evidence presented at trial, the Court finds that the District does not presently discriminate on the basis of race in any aspect of its operations.

*Id.* at 1367.

Based on the foregoing, it is clear that this Court engaged in the following inquiry regarding the racial imbalances that existed within some classes within the schools.  First, the Court required the District to rebut the presumption that these imbalances were a result of the previous *de jure* segregated system, a presumption that in retrospect may have been inappropriately applied.  Then the Court inquired as to whether the District carried its burden of showing that these imbalances were not traceable to the previous *de jure* system and were not vestiges of that system.  The Court factually found that the imbalances were the result of the ability grouping system used by the schools, that the children were grouped in that system based upon their perceived ability, and that this ability was based upon their impoverished circumstances more than anything else and was certainly not traceable to the *de jure* segregated school system.

In this Court's view, this is the same inquiry that would be made in determining whether the ability grouping is based on the present results of past segregation.  Nevertheless, to make it

4

absolutely clear, this Court has reconsidered its previous decision and is now applying the precise *McNeal* standard: Is the District's ability grouping the present result of past segregation? Based upon the following findings, the answer is clearly no.

### Applying the *McNeal* Standard

As noted above, the Court finds that the application of the *McNeal* standard does not alter the Court's previous findings regarding the District's ability grouping. The Court adopts and incorporates all of the factual findings regarding ability grouping that are set forth in its previous Order, *Thomas County NAACP*, 299 F. Supp. 2d at 1358-59.[1] The Court adds to those findings the following. The Court finds that no child attending District schools at the time of trial had ever been enrolled in the District's previous *de jure* racially segregated system. The Court further finds that the achievement level of the black children in the certified class who have been placed in the lower achievement groups is not a result of the previous *de jure* segregated school system. Therefore, their placement in the lower achievement groups is not the present result of past segregation.[2] Accordingly, under the *Georgia NAACP* and *McNeal* standard, the District's ability grouping does not violate the

---

[1] The Court also notes that the Court of Appeals affirmed its finding that current racial imbalances in the student bodies of District schools are not the present result of past discrimination or present intentional discrimination. *Holton*, 425 F.3d at 1346, 1352-54.

[2] In light of these findings and conclusion, it is unnecessary to determine whether the District's ability grouping would also pass constitutional muster under the second prong of *McNeal* (that it remedies the results of past segregation through better educational opportunities). *See McNeal*, 508 F.2d at 1020.

Fourteenth Amendment or Title VI.[3]  Based on the foregoing, it is still this Court's judgment that the District should prevail on each of Plaintiffs' claims.

---

[3] Plaintiffs misunderstand *McNeal and Georgia NAACP.* Under Plaintiffs' interpretation, a constitutional violation occurs when racial imbalances exist due to "ability grouping" even if it is undisputed that the ability grouping imbalances are not related in any proximate way to the previous *de jure* segregated system.  Such an interpretation would place a higher burden on a school district to defend against a claim based upon racial imbalances within classes than it would to defend a claim based upon racial imbalances among schools.  Surely, the protections of the 14th Amendment do not fluctuate depending upon *where* the imbalances appear.

In *McNeal,* the children who were being placed into segregated classrooms based upon ability grouping had previously attended *de jure* segregated schools.  Therefore, the *McNeal* court wanted to assure that the children's recent and immediately preceding attendance at the *de jure* segregated schools was not the reason that they were being grouped based upon ability in the less rigorous academic tracks.  *See McNeal*, 508 F.2d at 1020.  The court wanted to prevent such grouping from "perpetuating" the past discrimination.  In *Georgia NAACP,* the Court acknowledged the *McNeal* standard but found that the same concerns addressed in *McNeal* were not pertinent where the children who were being grouped by ability had not previously attended a *de jure* segregated school.  *See Georgia NAACP*, 775 F.2d at 1415 ("The fact that the grouping of the predecessors to the members of this class may have been influenced by their attendance at segregated schools is not relevant to the constitutional validity of the grouping systems at issue here.").

Like the children in *Georgia NAACP,* the children in the present case never attended a *de jure* segregated school.  The Court notes that a key argument asserted by Plaintiffs on this point—that it does not matter that the children never attended a *de jure* segregated school because the District has employed some method of ability grouping continuously since its schools were first desegregated in 1970—is the exact same argument that was advanced but rejected in *Georgia NAACP*.  *Id.*  Moreover, although no previous legal finding of "unitary status" has ever been made because no previous lawsuit was ever filed until this one, this Court has already found that the effects of the *de jure* segregated system had ended before the children in this case ever entered the school system, and that finding was affirmed by the Court of Appeals.  *See Holton*, 425 F.3d at 1346, 1352-54.  It is therefore clear that neither *McNeal* nor *Georgia NAACP* alters this Court's previous conclusion that Plaintiffs' ability grouping claim must fail.

6

**Costs**

Upon further review, the Court acknowledges that it erred by not previously awarding costs to the District as the prevailing party. Accordingly, the District shall recover its costs from Plaintiffs.

IT IS SO ORDERED, this 21st day of April, 2006.

<pre>
                              S/Clay D. Land
                                   CLAY D. LAND
                         UNITED STATES DISTRICT JUDGE
</pre>